IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHRISTOPHER ROY KOCH, #73458, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 20-cv-00700-JPG |
| ) | |
| NURSE DEBROHA, JANE DOE 1, ) | |
| SGT. SCOTT, OFFICER KNYFF, ) | |
| SGT. MOORE, OFFICER GERMAINE, ) | |
| DR. LARSON, and WEXFORD ) | |
| MEDICAL, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Christopher Koch is a detainee at Ste. Genevieve County Jail located in St. Genevieve, Missouri. He filed this civil rights action pursuant to 42 U.S.C. § 1983 for constitutional deprivations that occurred during his pretrial detention at St. Clair County Jail. (Doc. 1). Plaintiff claims he was injured in an inmate assault and subsequently denied medical treatment for his injuries. (*Id*. at 7-17). He requests monetary relief. (*Id*. at 18).

The Complaint is now subject to preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this stage, all allegations are construed liberally in favor of the *pro se* plaintiff. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

1

**The Complaint**

Plaintiff sets forth the following allegations in the Complaint (Doc. 1, pp. 7-17):  While he was a pretrial detainee at St. Clair County Jail on July 22, 2019, Plaintiff was struck in the head by an inmate wearing a cast.  (*Id*. at 7).  The blow to his head caused Plaintiff to lose consciousness and fall to the floor.  (*Id*.)  He sustained head and neck injuries.  (*Id*.).

Rather than treating his injuries, Sergeant Scott and Head Nurse Debroha forced Plaintiff to participate in an investigation of the incident.  (*Id*. at 8).  Plaintiff was required to walk to an interview room for photographs of his injuries and an interview.  (*Id*.).  He was then forced to walk from the interview room to the nurse's office.  (*Id*.).

Plaintiff repeatedly complained of intense neck pain to Sergeant Scott, Nurse Debroha, Officer Knyff, and Nurse Jane Doe.  (*Id*.).  In their presence, Nurse Doe examined Plaintiff by forcefully jerking his neck back and forth and causing him to suffer additional unnecessary pain.  (*Id*.).  Nurses Debroha and Doe agreed that Plaintiff needed stitches at an outside hospital.  (*Id*. at 9).  However, they refused to provide him with a neck brace, wheelchair, or other medical care.  (*Id*.).  Plaintiff blames Wexford Medical for its policy, custom, or practice of hiring incompetent medical staff to work at the Jail.  (*Id*.).

Officer Knyff transported Plaintiff to the hospital.  (*Id*.).  Prior to his departure, Plaintiff was put in handcuffs and leg shackles and placed into a vehicle without a seatbelt.  (*Id*. at 9-10).  Officer Knyff then drove recklessly, making swift turns and sudden stops and causing Plaintiff to slide from side to side.  (*Id*. at 10).  The officer then forced the exhausted and injured detainee to walk from the parking lot into the hospital, despite Plaintiff's pleas for help.  (*Id*.).  In the process, Plaintiff lost consciousness and collapsed.  (*Id*.).  When he regained consciousness, Plaintiff found himself in the emergency room on a stretcher wearing a neck brace.  (*Id*. at 11).

While there, Officer Knyff refused to help Plaintiff walk to the toilet.  (*Id*. at 11).  The officer instead ordered him to use a makeshift bedpan in the presence of passersby.  (*Id*.).  Plaintiff was so humiliated when he soiled himself in front of others that he developed anxiety requiring treatment with psychotropic medications after returning to the Jail.  (*Id*. at 12).

Following a CT scan and an MRI, Plaintiff was diagnosed with a fractured C4 vertebrae.  (*Id*.).  He was transported by ambulance to Saint Louis University Hospital for treatment by a neurosurgeon.  (*Id*.).  Plaintiff was given a neck brace to wear for eight weeks and scheduled for a follow-up appointment thereafter.  (*Id*.).

On September 16, 2020, Sergeant Moore and Officer Germaine escorted Plaintiff to Saint Louis University for follow-up care.  (*Id*. at 12-13).  The officers neglected to bring Plaintiff's test results with them, and Sergeant Moore violated Plaintiff's privacy rights under HIPAA by having his girlfriend retrieve the information from Memorial Hospital.  (*Id*. at 13).  Sergeant Moore then forced Plaintiff to leave the neurosurgeon's office without the necessary referral for physical therapy (PT) issued by the specialist.  (*Id*. at 14-15).

In November 2019, Plaintiff began filing grievances to complain about the denial of medical care for his fractured vertebrae.  (*Id*. at 15).  On December 4, 2019, Officer Bunjak informed Plaintiff that the Jail's medical department never received the PT referral from September 16, 2019.  (*Id*.).  Plaintiff immediately signed an authorization for release of this information and continued filing "complaint after complaint over the issue" until he was finally seen by Dr. Larson, the Jail's physician, on January 16, 2020.  (*Id*. at 15-16).  Dr. Larson sent Plaintiff to a single PT session at Memorial Hospital Orthopedics.  (*Id*.).  This proved to be too little too late, and Plaintiff continues to suffer from pain, stiffness, and loss of mobility in his neck and head.  (*Id*. at 16).

Based on the allegations, the Court finds it convenient to designate the following enumerated counts in the *pro se* Complaint:

**Count 1:** Denial of medical care claim against Wexford Medical, Nurse Debroha, Jane Doe 1, Sergeant Scott, Officer Knyff for failing to timely or adequately treat Plaintiff for the injuries he sustained on July 22, 2019.

**Count 2:** Denial of medical care claim against Officer Knyff for transporting Plaintiff to the hospital in a reckless manner and causing him to sustain further injury on July 22, 2019.

**Count 3:** Claim against Officer Knyff for punishing and humiliating Plaintiff by forcing him to use a makeshift bedpan in public at the hospital on July 22, 2019.

**Count 4:** Denial of medical care claim against Sergeant Moore and Officer Germaine for their failure to provide necessary medical information or to obtain a PT referral at Plaintiff's neurosurgery appointment on September 16, 2019.

**Count 5:** HIPAA claim against Sergeant Moore and Officer Germaine for sharing Plaintiff's private medical information with Sergeant Moore's girlfriend.

**Count 6:** Denial of medical care claim against Dr. Larson for the delay in Plaintiff's follow-up appointment and PT referral until January 16, 2020.

**Any claim that is mentioned in the Complaint but not addressed herein is considered dismissed without prejudice as inadequately pled under *Twombly*.**[1]

## Discussion

### Counts 1, 2, 3, 4, and 6

The Fourteenth Amendment governs claims brought by pretrial detainees for unconstitutional conditions of confinement, including the denial of medical care. A Fourteenth Amendment due process claim for inadequate medical care involves a two-part analysis. The first "focuses on the intentionality of the individual defendant's conduct" and "asks whether the

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

medical defendants acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their handling of [the plaintiff's] case." *McCann v. Ogle Cty., Ill.,* 909 F.3d 881, 886 (7th Cir. 2018) (internal quotations omitted). The second asks "whether the challenged conduct was objectively reasonable." *Id*. This, in turn, requires consideration of "the totality of the facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable." *Id*.

The Complaint articulates a colorable Fourteenth Amendment claim in Count 1 against Scott, Debroha, Knyff, and Jane Doe 1 for failing to treat Plaintiff's injuries following his attack on July 22, 2019; Count 2 against Knyff for transporting Plaintiff to the emergency room in a manner that caused him to sustain further unnecessary pain and injury; Count 3 against Knyff for inflicting unnecessary punishment, pain, and humiliation in response to Plaintiff's request to use the restroom at the hospital; Count 4 against Moore and Germaine for causing a significant delay in Plaintiff's follow-up care and physical therapy; and Count 6 against Larson for delaying and/or denying Plaintiff's follow-up care and physical therapy. With a single exception, Counts 1, 2, 3, 4, and 6 shall receive further review against all defendants named in connection with each claim above.

The only exception is Count 1 against Wexford, the private medical corporation that employed medical staff at the Jail. In conclusory fashion, Plaintiff asserts that Wexford has a practice of hiring incompetent staff. (Doc. 1, pp. 7-8). Plaintiff cannot rely entirely on bald or conclusory assertions to state a claim. In the absence of any particular facts suggesting the existence of an actual policy, custom, or routine practice that caused a constitutional violation, Count 1 must be dismissed without prejudice against this defendant.

**Count 5**

The Health Insurance Portability and Accountability Act (HIPAA) prohibits the disclosure of a patient's medical records without his consent.  *See* 42 U.S.C. §§ 1320d-1 to d-7.  However, the statute does not expressly create a private right of action to enforce this substantive prohibition, and the Seventh Circuit recently held that HIPAA does not confer individual enforcement rights, either express or implied.  *See Stewart v. Parkview Hosp.*, 940 F.3d 1013, 1015 (7th Cir. 2019).  Accordingly, Plaintiff's claim for money damages against Moore and Germaine for unlawfully sharing his medical information shall be dismissed with prejudice.

**Identification of Unknown Defendant**

Plaintiff shall be allowed to proceed with Count 1 against Nurse Jane Doe.  However, this defendant must be identified with particularity before service of the Complaint can be made on her.  Plaintiff will have the opportunity to engage in limited discovery to ascertain the identity of Nurse Jane Doe.  *Rodriguez*, 577 F.3d at 832.  Defendants are obligated to respond to discovery aimed at identifying this individual with particularity.  Once the name of Nurse Jane Doe is discovered, Plaintiff must file a motion to substitute the newly-identified defendant in place of the generic designations in the caption and Complaint.

**Disposition**

**IT IS ORDERED** that the Complaint (Doc. 1) survives screening under 28 U.S.C. § 1915A, as follows:

- **COUNT 1** against **DEBROHA, JANE DOE, SCOTT,** and **KNYFF**;
- **COUNTS 2** and **3** against **KNYFF**;
- **COUNT 4** against **MOORE** and **GERMAINE**; and
- **COUNT 6** against **LARSON**.

**Because this case involves claims for the denial of medical care, the Clerk of Court is DIRECTED to ENTER the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act**.

**IT IS ORDERED** that **COUNT 1** against **WEXFORD MEDICAL** is **DISMISSED** without prejudice, and **COUNT 5** against **MOORE** and **GERMAINE** is **DISMISSED** with prejudice.  The Clerk's Office is **DIRECTED** to **TERMINATE** Defendant **WEXFORD MEDICAL** as a party in CM/ECF.

The Clerk of Court shall prepare for Defendant**s DEBROHA, SCOTT, KNYFF, MOORE, GERMAINE, LARSON,** and **JANE DOE 1 (once identified)**:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to each defendant's place of employment as identified by Plaintiff.  If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with that defendant's current work address, or, if not known, his or her last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).  **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED**.

**DATED: 8/3/2020**

                                              s/J. Phil Gilbert
                                              **J. PHIL GILBERT**
                                              **United States District Judge**

## **Notice to Plaintiff**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**